# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                                       :
                                                             :    Chapter 11
                                                             :
SKILLSOFT CORPORATION, et al.                                :    Case No. 20-11532-MFW
                                                             :
       Debtors.¹                                             :    (Jointly Administered)
                                                             :
                                                             :    Hearing Date: July 24, 2020 at 10:30 a.m. (ET)
                                                             :    Obj. Deadline: July 20, 2020 at 4:00 p.m. (ET)
------------------------------------------------------------ x
```

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING CERTAIN DEBTORS TO CONTINUE SELLING RECIEVABLES AND RELATED RIGHTS PURSUANT TO ACCOUNTS RECIEVABLE AGREEMENT, (II) MODIFYING THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

Skillsoft Corporation ("**Skillsoft**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully represent in support of this motion (the "**Motion**"):

### Relief Requested

1.  By this Motion, the Debtors request pursuant to sections 362, 363, 364, 365, and 503 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Skillsoft Corporation (6115); Amber Holding Inc. (0335); SumTotal Systems LLC (7228); MindLeaders, Inc. (6072); Accero, Inc. (4684); CyberShift Holdings, Inc. (2109); CyberShift, Inc. (U.S.) (0586); Pointwell Limited; SSI Investments I Limited; SSI Investments II Limited; SSI Investments III Limited; Skillsoft Limited; Skillsoft Ireland Limited; ThirdForce Group Limited; Skillsoft U.K. Limited; and Skillsoft Canada, Ltd. The location of the Debtors' corporate U.S. headquarters is 300 Innovative Way, Suite 201, Nashua, NH 03062.

4001-1, 4001-2, 6004-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") entry of an order:

    i. Authorizing certain of the Debtors (the "**Originators**") to assume, and approving the assumption of, pursuant to section 365 of the Bankruptcy Code the AR Purchase Agreement (as defined hereinafter);

    ii. Deeming the sale of any Receivables (as defined hereinafter) by the Originators pursuant to the AR Purchase Agreement (as defined hereinafter) to be free and clear of all liens, claims, and encumbrances pursuant to section 363 of the Bankruptcy Code;

    iii. Providing administrative expense priority to claims for actual damages arising from any Originator's failure to satisfy its obligations to Non-Debtor Affiliate Skillsoft Receivables Financing LLC (the "**AR Borrower**") pursuant to section 503 of the Bankruptcy Code;

    iv. Granting the AR Facility Agent (as subsequently defined) (for the benefit of the AR Borrower) postpetition liens pursuant to section 364 of the Bankruptcy Code;

    v. Modifying the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to allow to permit such offsets and deductions by the AR Borrower, as contemplated in the AR Purchase Agreement (as defined hereinafter); and

    vi. granting certain other related relief, as set forth in the proposed Order.

2. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

4. On June 14, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of John Frederick In Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 16] (the "**First Day Declaration**"),[2] incorporated herein by reference.

7. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related to the Use Thereof, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims; (II) Extending Time to Comply with 11 U.S.C. § 345(b); and (III) Granting Related Relief* [Docket No. 10] (the "**Cash Management Motion**") with the Court. Attached

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

thereto as **Exhibit B** was a proposed form of order granting the relief requested in the Cash Management Motion on a final basis (the "**Original Cash Management Order**").

8. On July 6, 2020, the Debtors filed a revised form of Original Cash Management Order (the "**Proposed Cash Management Order**") under certification of counsel [Docket No. 155] reflecting certain comments received from CIT Bank, N.A. ("**CIT**").

9. On July 7, 2020, the Court held a hearing with respect to the Proposed Cash Management Order and requested removal of the language requested by CIT noting the Debtors could seek such relief pursuant to a separate motion. Accordingly, the Debtors submitted a revised form of the Proposed Cash Management Order under certification of counsel [Docket No. 170] and the Court entered the *Final Order (I) Authorizing Debtors to (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related to the Use Thereof, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims; (II) Extending Time to Comply with 11 U.S.C. § 345(b); and (III) Granting Related Relief*. [Docket No. 174] (the "**Cash Management Order**").

10. The Debtors file this Motion seeking entry of the Proposed Order providing CIT the protections sought in the Proposed Cash Management Order, but not included in the Cash Management Order.

## AR Facility

11. The Originators are parties to receivables purchase agreements attached to the Proposed Order as **Exhibit A** (together with all related documents, the "**AR Purchase Agreement**") with AR Borrower. Pursuant to the AR Purchase Agreement, the AR Borrower purchases accounts receivable (the "**Receivables**") from the Originators (and the related cash

proceeds)[3] in exchange for cash borrowed by the AR Borrower pursuant to that certain *Credit Agreement* (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**AR Facility Agreement**") by and between (i) the AR Borrower, as borrower; (ii) the lenders party thereto (collectively, the "**AR Facility Lenders**"); and (iii) CIT, as administrative agent, collateral agent, and accounts bank (the "**AR Facility Agent**"). The AR Facility is secured by substantially all of the assets of the AR Borrower, including the Receivables and the cash proceeds therefrom. The Debtors do not guarantee the obligations under the AR Facility and the AR Facility Lenders do not have recourse to the Debtors except in limited circumstances relating to a breach by a Debtor Originator of certain representations or warranties made in respect of the Receivables sold by such Debtor Originator. The sale of the Receivables from the Originator to the AR Borrower provides the Originators with liquidity to fund operating disbursements and limits certain risks of non-collection associated with the Receivables.

12. The AR Facility is scheduled to be funded on the third to last business day of each calendar month. The next scheduled funding date is July 29, 2020.

13. Under the terms of the AR Facility Agreement, CIT is only required to fund if a cash management order has been entered in form and substance satisfactory to the AR Facility Lenders and CIT. CIT indicated it does not consider the Cash Management Order satisfactory in form and substance absent the language it requested in the Proposed Cash Management Order. However, CIT has further indicated that the Cash Management Order, in conjunction with the relief sought in the Proposed Order, would be satisfactory.

---

[3] The sale of such Receivables occur immediately and automatically upon the creation of the Receivables without further action of the AR Borrower or the Originator. Under the terms of the AR Facility and AR Purchase Agreement, the sales of the Receivables are intended to be "true sales" and absolute assignments of the Receivables.

## Relief Requested Should Be Granted

### A. The Debtors Should be Authorized to Assume the AR Purchase Agreement Under the Business Judgment Standard.

14. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor's decision to assume or reject an executory contract or unexpired lease must satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,* 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); *In re Network Access Solutions, Corp.,* 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"). Accordingly, the Debtor Originators' decision to assume the AR Purchase Agreement is within such Debtors' business judgment and should be approved by the Court pursuant to section 365(a) of the Bankruptcy Code.

### B. Section 363 of the Bankruptcy Code Allows for the Free and Clear Sale of Any Receivable by the Originators to a Good Faith Purchaser.

15. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim or interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16.     Satisfaction of any of the five requirements enumerated in section 363(f) suffices to authorize a debtor's sale of assets free and clear of all interests (*i.e.,* all liens, claims, rights, interests, charges, or encumbrances). *See In re Kellstrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."). The Debtors' satisfy section 363(f) because the Debtors' prepetition financing agreements and the DIP Financing Documents permit the sale of the Receivables, and other parties holding security interests in the Receivables, if any, could be compelled to accept a money satisfaction of such interests. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003) (section 363(f)(5) is satisfied where the interest in property being sold is subject to monetary valuation). Because the Receivables can be reduced to a monetary amount, sale of the Receivables is authorized under section 363(f)(5) and, accordingly, the Debtors request that the Court approve those sales free and clear of all liens, claims, encumbrances, or interests within the meaning of section 363(f) of the Bankruptcy Code.

17.     Additionally, the AR Borrower should constitute a good faith purchaser of any Receivables by the Originators pursuant to the AR Purchase Agreement. Under section 363(m) of the Bankruptcy Code, the validity of sales of estate property under sections 363(b) or 363(c) of the Bankruptcy Code is preserved, even if the sale is reversed on appeal, as long as the sale was to a purchaser that made the purchase in good faith. *See* 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith purchaser," courts interpreting section 363(m) have concluded that the "good faith purchaser" test "is twofold: a good faith purchaser is one who buys in good faith and for value." *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, 355-56 (B.A.P. 8th Cir. 2000); *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1989)

("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."). Accordingly, the Debtors submit that section 363 of the Bankruptcy Code permits the sale of any Receivables to the AR Borrower as a good faith purchaser.

### C. The AR Borrower Should Be Granted Administrative Priority Claims Under Certain Circumstances Pursuant to Section 503(b) of the Bankruptcy Code.

18. Under Bankruptcy Code § 503(b)(1), a creditor is entitled to an administrative priority claim for "the actual, necessary costs and expenses of preserving the estate . . . ." Damages resulting from a debtor's breach of a bankruptcy court order or assumed contract may be entitled to administrative priority under Bankruptcy Code § 503(b)(1). *See Reading Co. v. Brown,* 391 U.S. 471, 477 (1968) (holding that a debtor's post-petition activities that cause damage to a third party can result in an administrative claim). Accordingly, to the extent applicable, the AR Borrower should be entitled to administrative priority claim for actual damages arising from any Originator's failure to satisfy its obligations under the AR Purchase Agreement.

### D. The Court Should Authorize the Postpetition Liens Pursuant to Section 364(c)(2) of the Bankruptcy Code.

19. Pursuant to section 364(c)(2), the Court may authorize a debtor to incur postpetition secured debt, upon finding that (a) the debtor is unable to obtain unsecured credit with priority under section 503(b)(1); (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable, and adequate. *See In re St. Mary Hosp.*, 86 B.R. 393, 402 (Bankr. E.D. Pa. 1988) (authorizing the debtor to obtain credit pursuant to section 364(c)(2) of the Bankruptcy Code, after notice and a hearing, upon showing that unsecured credit could not be obtained). Courts "permit debtors-in-possession to exercise their basic business judgment" in analyzing whether section 364(c) relief should be granted. *See In re*

*Ames Dep't Stores, Inc.*, 115 B.R. at 37-38. In the context of their efforts to reorganize or consummate asset sales, the Debtors have determined that continuation of the AR Facility, along with entering into the DIP Facility, are essential to preserving their liquidity and continuing their operations during the chapter 11 process. For these reasons, the Debtors respectfully request that the Court authorize the Originators to grant the AR Facility Agent (for the benefit of the AR Borrower) postpetition liens under section 364(c)(2) of the Bankruptcy Code in the event that the transfer of Receivables pursuant to the AR Facility is recharacterized as an extension of credit or pledge rather than an absolute sale.

E. **Modification of the Automatic Stay is Warranted with Respect to the Securitization Facility.**

20.     Pursuant to section 362(d)(l) of the Bankruptcy Code, the Court shall grant relief from the automatic stay imposed thereby "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code, "leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). The Debtors submit that "cause" exists here to modify the automatic stay to permit offsets and deductions of any prepetition amounts by the AR Borrower. Such modification is limited in scope and is necessary to allow the AR Facility to function as it was designed. Accordingly, the Court should modify the automatic stay, pursuant to section 362(d)(1) of the Bankruptcy Code, to the extent necessary to permit the AR Borrower to offset and deduct prepetition amounts in connection with the AR Purchase Agreement.

F. **The Relief Requested is Appropriate under the Circumstances and is Consistent with Prior Relief Granted by this Court.**

21.     The AR Purchase Agreement provides significant benefits to the Debtors, including access to liquidity, limitation to risk exposure, and, accordingly, an increased level of certainty in cash flow forecasting and reduced need for cash reserves. Without continued

performance of CIT under the terms of the AR Purchase Agreement, the Debtors would be forced to increase the size of the DIP Facility to cover liquidity needs and account for risk of Receivables non-payment, which would result in a diminution of value of Debtors' estates compared to continued performance by CIT under the AR Purchase Agreement.

22. Finally, judges in this district have previously granted relief similar to that requested in the Motion to allow debtors-in-possession to continue operating under receivable purchase facilities. *See, e.g.*, *In re Pyxus Int'l, Inc.*, Case No. 20-11570 (LSS) (Bankr. D. Del. June 16, 2020) [Docket No. 76] (interim order approving, among other things, performance of prepetition obligations, sale of receivables free and clear, protective security interests, modification of the automatic stay); *In re Bluestem Brands, Inc.*, Case No. 20-10566 (MFW) (Bankr. D. Del. May 18, 2020) [Docket No. 371] (final order authorizing debtors to sell receivables free and clear, modifying automatic stay for setoff and netting of obligations, and giving good-faith purchaser protections); *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. July 17, 2019) [Docket No. 466] (final order approving, among other things, assumption of receivables agreements, sale of receivables free and clear with good faith protections, superpriority claims, and protective security interests).

## Notice

23. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the Ad Hoc First Lien Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: Scott J. Greenberg, Esq. and Christina M. Brown, Esq.); (iv) counsel to the Ad Hoc Crossholder Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Evan R. Fleck, Esq., Benjamin M. Schak,

Esq. and Sarah Levin, Esq.); (v) counsel to Wilmington Savings Fund Society, FSB ("**WSFS**"), in its capacity as First Lien Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Gregg S. Bateman, Esq.); (vi) counsel to WSFS, in its capacity as Second Lien Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Gregg S. Bateman, Esq.); (vii) counsel to CIT Bank, N.A., in its capacity as AR Facility Agent, Holland & Knight LLP, 200 Crescent Court, Suite 1600, Dallas, Texas 75201 (Attn: Samuel Pinkston); (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the District of Delaware; (x) the Securities and Exchange Commission; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtors respectfully submit that no further notice is required.

[*remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 10, 2020
      Wilmington, Delaware

                      */s/ Amanda R. Steele*
                      RICHARDS, LAYTON & FINGER, P.A.
                      Mark D. Collins (No. 2981)
                      Amanda R. Steele (No. 5530)
                      Christopher M. De Lillo (No. 6355)
                      Megan E. Kenney (No. 6426)
                      Garrett S. Eggen (No. 6655)
                      One Rodney Square
                      910 N. King Street
                      Wilmington, Delaware 19801
                      Telephone: (302) 651-7700
                      Facsimile: (302) 651-7701
                      Email: steele@rlf.com

                      -and-

                      WEIL, GOTSHAL & MANGES LLP
                      Gary T. Holtzer (admitted *pro hac vice*)
                      Robert J. Lemons (admitted *pro hac vice*)
                      Katherine Theresa Lewis (admitted *pro hac vice*)
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007

                      *Proposed Attorneys for Debtors*
                      *and Debtors in Possession*