# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:                                     :
                                           :        **Chapter 11**
                                           :
**SKILLSOFT CORPORATION, *et al.*,**        :        **Case No. 20–11532 (MFW)**
                                           :
Debtors.[1]                                :        **(Jointly Administered)**
                                           :
---------------------------------------------------------- x

## DECLARATION OF JOHN FREDERICK IN SUPPORT OF (A) MOTION OF DEBTORS TO SHORTEN NOTICE AND OBJECTION PERIODS WITH RESPECT TO (I) AMENDED DISCLOSURE STATEMENT AND (II) RESOLICITATION MOTION AND (B) RELIEF REQUESTED IN THE RESOLICITATION MOTION

I, John Frederick, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury under the laws of the United States that the following is true to the best of my knowledge, information, and belief:

1.      I am the Chief Administrative Officer ("**CAO**") and a member of the board of directors (the "**Board**") of Debtor Skillsoft Corporation, a Delaware corporation ("**Skillsoft**" and, together with Debtor Pointwell Limited and the direct and indirect subsidiaries of Pointwell Limited, the "**Company**"). Additional information regarding my role at the Company and my professional background, as well as information about the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of John Frederick In Support of Debtors' Chapter 11 Petitions and First Day Relief*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Skillsoft Corporation (6115); Amber Holding Inc. (0335); SumTotal Systems LLC (7228); MindLeaders, Inc. (6072); Accero, Inc. (4684); CyberShift Holdings, Inc. (2109); CyberShift, Inc. (U.S.) (0586); Pointwell Limited; SSI Investments I Limited; SSI Investments II Limited; SSI Investments III Limited; Skillsoft Limited; Skillsoft Ireland Limited; ThirdForce Group Limited; Skillsoft U.K. Limited; and Skillsoft Canada, Ltd. The location of the Debtors' corporate U.S. headquarters is 300 Innovative Way, Suite 201, Nashua, NH 03062.

[D.I. 15] (the "**First Day Declaration**"),[2] filed on the Petition Date and incorporated herein by reference, and in the *Supplemental Declaration of John Frederick in Support of Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 51] (the "**Supplemental Declaration**"), filed on June 16, 2020 and incorporated herein by reference.

2.     I am knowledgeable and familiar with the Debtors' and the Company's day-to-day operations, businesses and financial affairs, books and records, and the circumstances leading to the commencement of these chapter 11 cases.

3.     Except as otherwise indicated herein, the facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of or advisors to the Company, or my opinion based upon my experience, knowledge, and information concerning the Company's operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration on that basis.

4.     On the date hereof, the Debtors filed:

- *Amended Joint Chapter 11 Plan of Skillsoft Corporation and Its Affiliated Debtors* (the "**Amended Plan**")

- *Disclosure Statement for Amended Joint Chapter 11 Plan of Skillsoft Corporation and Its Affiliated Debtors* (the "**Amended Disclosure Statement**")

- *Motion of Debtors for Entry of an Order (I) Authorizing Entry into the Amended Restructuring Support Agreement, (II) Determining the Scope of the Proposed Resolicitation, (III) Approving the Adequacy of the Disclosure Statement in Connection with the Amended Chapter 11 Plan, (IV) Establishing Certain Deadlines and Procedures*

---

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration or the Resolicitation Motion (defined herein), as applicable.

*in Connection with Confirmation of the Amended Chapter 11 Plan, and (V) Granting Related Relief* (the "**Resolicitation Motion**")

- *Motion of Debtors to Shorten Notice and Objection Periods with Respect to (I) Amended Disclosure Statement and (II) Resolicitation Motion* (the "**Motion to Shorten**")

5.    I am familiar with the contents of the Amended Plan and the Amended Disclosure Statement, as well as the relief requested in the Resolicitation Motion and the Motion to Shorten.  For the reasons stated in more detail below, I believe that the relief sought in the Resolicitation Motion and the Motion to Shorten is necessary for the Debtors to preserve value for their estates, minimize value destruction to their businesses, and accomplish a successful reorganization.

**I.**
**Background and Update on the Debtors' Restructuring**

6.    As discussed in the First Day Declaration, the Debtors filed these chapter 11 cases to implement a pre-negotiated, comprehensive, consensual restructuring through the Prepackaged Plan, with the support of the Consenting Creditors.  Meanwhile, the Company also continued negotiations (with the consent of the Consenting Creditors) with the Interested Party regarding a potential Alternative Transaction (as defined in the Restructuring Support Agreement).

7.    Since the Petition Date and the first day hearing, the Debtors, the Consenting Creditors, and the Interested Party have continued negotiations regarding the terms of a potential sale of substantially all of the Debtors' assets (a "**Sale Transaction**"), and have worked to identify the optimal method of implementing a Sale Transaction.

8.    As a result of those discussions, I understand that certain changes were necessary to the Restructuring Support Agreement and, by extension, the Prepackaged Plan and Disclosure Statement to preserve the Company's and the Consenting Creditors' options to pursue a Sale Transaction after the Debtors emerge from chapter 11.  Accordingly, the Debtors determined

3

to file the Amended Plan and Amended Disclosure Statement, and seek related relief by the Motion

to Shorten and the Resolicitation Motion.  For the reasons stated below, notwithstanding the

resolicitation of votes pursuant to the Resolicitation Motion, I believe that it remains imperative

for the Debtors to consummate the restructuring transactions under the Amended Plan and emerge

from chapter 11 as quickly as possible.

**II.**
**Effects of the Chapter 11 Cases on the Debtors' Business**

9.      As discussed in the First Day Declaration, to reap the full benefits of the

proposed restructuring, the Debtors must emerge from these chapter 11 cases as soon as possible.

Although continued accrual of administrative and legal costs in chapter 11 is a part of that, a

significant reason is grounded in the Debtors' ordinary business cycle.

10.     The Company is a learning and talent management enterprise software

company that develops and provides learning management system software and learning content

assets.  The Company serves thousands of organizations around the globe, including 65% of the

Fortune 500 list.  *See* First Day Declaration ¶ 7.  The Company typically engages with their

customers pursuant to annual or multi-year contracts, with a substantial majority of such contracts

with renewal dates in the third and fourth quarters of each year.  Customers' entry into these

agreements generally is decided in connection with the organization's annual budget and

procurement process.  Because the majority of the Company's customers operate on the calendar

year, that process usually culminates with procurement decisions in the third or fourth quarter.

Renewals of such contracts occur on the anniversary date of purchase, leading to a substantial

majority of the Debtors' business occurring in the third and fourth quarters of the year.  This is

therefore a critical period for the Company.

RLF1 23702426V.1

11.     Although many customers may make their procurement decisions in the later months of the calendar year, evaluations and submission of proposals from providers such as the Company necessarily take place in advance of those final decisions.  In the Debtors' experience, the evaluation process for new contracts or renewal of contracts with their customers can occur over three to nine months prior to the customer's eventual decision.  Accordingly, the Company currently is in the middle of the evaluation process with the majority of its current and potential customers and has been proactively communicating with them about the chapter 11 proceedings.  The time for those customers to make the final decisions regarding new contracts or renewal of contracts is quickly approaching.

12.     Despite the consensual and pre-negotiated nature of these chapter 11 cases, and the Company's best efforts at communication, many customers have expressed concerns related to the Debtors' cases.  As noted in the First Day Declaration, the Company has entities based not only in the United States but also in Canada, Ireland, and the United Kingdom, with significant numbers of customers throughout the European Union, Asia Pacific region and in other countries around the world.  As a result, many of the Debtors' customers are not familiar with the Bankruptcy Code or the chapter 11 reorganization process.  In my and other Company employees' conversations with customers, many customers view any bankruptcy or insolvency proceeding with skepticism or concern, raising questions related to the Company's ability to continue to provide services to the customer now and in the future.  This applies not only to customers based outside of the United States, but even to those customers in the United States, including major corporations, that similarly do not have an informed view of the Bankruptcy Code or the chapter 11 reorganization process.  The Company therefore has had to expend significant effort to provide

assurances to customers here and abroad that the chapter 11 proceedings will help, not hurt, the Company's viability and ability to serve those customers.

13.     Apart from customer concerns, the Company has also experienced efforts by competitors to poach the Company's customers, trying to exploit customers' perceived uncertainty or concerns about the chapter 11 process.  This started in the thirty-six hour period between the filing of the chapter 11 petitions and the "first day" hearing on June 16, 2020.  In those intervening hours, competitors contacted the Debtors' customers attempting to solicit their business and alleging, among other things, that in the coming months the Debtors would not be able to make investments in services or would not be able to provide the same level of service. Since then, those efforts have only increased.  For example, I understand that a number of competitors are offering special discounted rates for the Company's customers to switch, even if those customers are bound by contracts with the Company.

14.     From the beginning of these chapter 11 cases, the Company has had a positive message to communicate to the market at large.  That message was that the quick, pre-negotiated restructuring through the Prepackaged Plan and according to the milestones in the Restructuring Support Agreement will allow the Company to emerge with a delevered balance sheet and increased working capital, and better able to serve their customers for the near and long-term.  In light of the peak selling and renewal season, upcoming procurement decisions, and customer concerns, I believe that any delay in proceeding to confirmation of the Amended Plan will create uncertainty in the market, which could have adverse effects on the Debtors' efforts to obtain new business or renew existing contracts in the coming weeks.  As those contracts often are multi-year contracts, that in turn could have adverse effects on the Debtors' revenues not only this year, but in the years to come.  In sum, I believe it is necessary to proceed as quickly as possible

with confirmation of the Amended Plan in order to maximize the value of the Debtors' estates and to minimize, or at least mitigate, any adverse effects of the chapter 11 process on the Debtors' business.

I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 10, 2020

*/s/ John Frederick*
John Frederick
Chief Administrative Officer

Skillsoft Corporation and its Debtor affiliates

RLF1 23702426V.1