**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                               :

                                                     :          **Chapter 11**

                                                     :

**SKILLSOFT CORPORATION, *et al.***        :          **Case No. 20-11532-MFW**

                                                     :

        **Debtors.**[1]                              :          **Jointly Administered**

                                                     :

                                                     :          **Re: Docket No. 233, 236, 255, 263**

------------------------------------------------------------- x

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND**
**ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11**
**PLAN OF SKILLSOFT CORPORATION AND ITS AFFILIATED DEBTORS**

        Skillsoft Corporation and its affiliated debtors in the above-captioned chapter 11

cases, as debtors and debtors in possession (collectively, the "**Debtors**"), having proposed and

filed (A) the *Second Amended Joint Chapter 11 Plan of Skillsoft Corporation and its Affiliated*

*Debtors*, dated as of July 24, 2020 and filed with the United States Bankruptcy Court for the

District of Delaware (the "**Court**") on July 24, 2020 [Docket No. 233] (as supplemented by that

certain supplement to the Plan, dated and filed with the Court on July 24, 2020 [Docket No. 236],

as amended on August 4, 2020 [Docket No. 255] and August 5, 2020 [Docket No. 263] (together,

and as may be further amended or supplemented, the "**Plan Supplement**"), and as otherwise

amended in accordance with the terms thereof and this Order, the "**Plan**"), annexed hereto as

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
        identification number, as applicable, are Skillsoft Corporation (6115); Amber Holding Inc. (0335);
        SumTotal Systems LLC (7228); MindLeaders, Inc. (6072); Accero, Inc. (4684); CyberShift Holdings,
        Inc. (2109); CyberShift, Inc. (U.S.) (0586); Pointwell Limited; SSI Investments I Limited; SSI
        Investments II Limited; SSI Investments III Limited; Skillsoft Limited; Skillsoft Ireland Limited;
        ThirdForce Group Limited; Skillsoft U.K. Limited; and Skillsoft Canada, Ltd.  The location of the
        Debtors' corporate U.S. headquarters is 300 Innovative Way, Suite 201, Nashua, NH 03062.

**Exhibit A**; and the Debtors having served the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Skillsoft Corporation and its Affiliated Debtors*, dated as of July 24, 2020 and filed with the Court on July 24, 2020 [Docket No. 234] (the "**Disclosure Statement**") on the holders of Claims[2] and Interests pursuant to the Resolicitation Order (as defined herein), *see* Certificates of Service [Docket No. 124, 153, 171, 242, 253]; and the Court having entered the *Order (I) Scheduling Combined Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of Prepackaged Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (IV) Conditionally Waiving Requirement of Filing Statement of Financial Affairs and Schedules of Assets and Liabilities; (V) Approving Notice and Objection Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Conditionally Waiving Requirements to Convene the Section 341 Meeting of Creditors; and (VII) Granting Related Relief Pursuant to Sections 105(a), 341, 521(a), 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 1007, 2002, 3017, and 3018* (the "**Scheduling Order**") [Docket No. 82] and the *Order (I) Authorizing Entry into the Amended Restructuring Support Agreement, (II) Authorizing Resolicitation with Respect to the Amended Plan, (III) Approving the Disclosure Statement and Forms of Modified Ballots, (IV) Scheduling Hearing to Consider Confirmation of Amended Plan, (V) Establishing an Objection Deadline to Object to Amended Plan, (VI) Approving the Form and Manner of Notice of Confirmation Hearing and Objection Deadline, and (VII) Granting Related Relief* (the "**Resolicitation Order**") [Docket No.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement (each as defined herein), as applicable.

231], which, among other things, scheduled the confirmation hearing to consider confirmation of the Plan for August 6, 2020 (the "**Confirmation Hearing**"); and due notice of the Confirmation Hearing having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Scheduling Order and the Resolicitation Order, and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Plan Supplement having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Resolicitation Order, and such filings and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Confirmation Hearing, including the Plan (including the Plan Supplement), the *Declaration of John Frederick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Skillsoft Corporation and its Affiliated Debtors* [Docket No. 257] (the "**Confirmation Declaration**"), the *Certification of Leanne V. Rehder Scott with Respect to the Tabulation of Votes on the Second Amended Joint Chapter 11 Plan of Skillsoft Corporation and its Affiliated Debtors*, filed with the Court on August 4, 2020 [Docket No. 254] (the "**Voting Certification**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, and the evidence regarding confirmation of the Plan; and objections to confirmation of the Plan all being withdrawn, resolved or overruled by the Court; **FINDS, DETERMINES, AND CONCLUDES** that:

<h1 style="text-align:center">FINDINGS OF FACT AND CONCLUSIONS OF LAW</h1>

A.    <u>Findings and Conclusions</u>.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding</u>.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.    This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.    The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    <u>Chapter 11 Petitions</u>.    On June 14, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.    The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.    No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy

Code.  Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.     Burden of Proof.  Each of the Debtors has met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

E.     Voting and Solicitation.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.  The Released Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

F.     Notice.  The transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, the Resolicitation Order, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

G.     Plan Supplement.  The Plan Supplement contains the following documents: (a) the New Corporate Governance Documents; (b) the slate of directors to be appointed to the New Board (to the extent known and determined) and, with respect to the members of the New Board disclosed pursuant to clause (b), information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (c) the Exit Credit Agreement term sheet; (d) the Warrant Agreement; (e) Rejected Executory Contract and Unexpired Lease List; (f) schedule of retained Causes of Action; (g) the A/R Exit Facility Agreement term sheet; and (h) the

Restructuring Transaction Steps. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Debtors reserve the right to alter, amend, supplement, update, or modify the Plan Supplement and any schedules, exhibits or amendments thereto prior to the Effective Date in accordance with the terms of the Plan and that certain First Amended and Restated Restructuring Support Agreement (the "**First Amended and Restated Restructuring Support Agreement**") appended to the Resolicitation Order as Exhibit A, and subject to the terms of this Order.

<u>**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**</u>

H.      <u>Plan Compliance with the Bankruptcy Code</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)      <u>Proper Classification; No Discrimination</u>.  In addition to Administrative Expense Claims, Fee Claims, Priority Tax Claims, and DIP Claims, which need not be classified, Articles III and IV of the Plan classify ten (10) Classes of Claims against and Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Debtors' classification scheme does not unfairly discriminate between holders of Claims and Interests. Furthermore, the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. The Plan therefore satisfies sections 1122 and 1123(a)(1)-(4) of the Bankruptcy Code.

(b)　　Implementation of the Plan. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(c)　　Non-Voting Equity Securities / Allocation of Voting Power.  The New Corporate Governance Documents prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.  The issuance of the Newco Equity and the Warrants (including the Warrant Equity issuable upon exercise thereof) complies with section 1123(a)(6) of the Bankruptcy Code.  On the Effective Date, each Reorganized Debtor shall adopt or be deemed to have adopted the New Corporate Governance Documents applicable to such Reorganized Debtor.

(d)　　Designation of Directors and Officers.  Section 5.6 of the Plan contains provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.  The identity and affiliations of any Person proposed to serve on the New Board were disclosed to the extent known before confirmation of the Plan in accordance with section 1129(a)(5) of the Bankruptcy Code prior to the Effective Date.

(e)　　Assumption and Rejection.  Article VIII of the Plan addresses the treatment of executory contracts and unexpired leases and satisfies the requirements of sections 365(b) and 1123 of the Bankruptcy Code.  As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all executory contracts and unexpired leases shall be deemed assumed, including

the First Amended and Restated Restructuring Support Agreement, without the need for any

further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date

under section 365 of the Bankruptcy Code, unless such executory contract or unexpired lease:

(i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated

pursuant to its own terms; (iii) is the subject of a motion to reject filed on or before the Effective

Date; or (iv) is identified on the Rejected Executory Contract and Unexpired Lease List.  The

Debtors have advanced sufficient evidence of adequate assurance of future payment of the

contracts and leases to be assumed.

(f)     Retention of Causes of Action and Reservation of Rights.  Except as

otherwise provided in the Plan, including sections 10.6, 10.7, 10.8, and 10.9, nothing contained in

the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, claims,

Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the

Debtors had immediately prior to the Effective Date on behalf of the Estates or themselves in

accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law,

including any affirmative Causes of Action against the Released Parties.  The Reorganized Debtors

shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of

setoff or recoupment, and other legal or equitable defenses as fully as if the chapter 11 cases had

not been commenced, and all of the Debtors' legal and equitable rights in respect of any

Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same

extent as if the chapter 11 cases had not been commenced.

I.     Plan Proposed in Good Faith.  The Debtors have proposed the Plan, the Plan

Supplement, and any other documents necessary to effectuate the Plan in good faith and not by

any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

J.      Payment for Services or Costs and Expenses.  Any payment made or to be made by the Debtors pursuant to the Plan for services or for costs and expenses of the Debtors' professionals in connection with their chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

K.      Best Interest of Creditors.  Confirmation of the Plan is in the best interests of creditors and satisfies section 1129(a)(7) of the Bankruptcy Code.

L.      Acceptance by Certain Classes.  Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 5 (General Unsecured Claims) are Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 6 (Subordinated Claims), Class 8 (Existing Parent Equity Interests), and Class 9 (Other Equity Interests) are Classes of Impaired Claims or Interests that are conclusively presumed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.  Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) are Classes of Impaired Claims that have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors.  On the Effective Date, Class 7 (Intercompany Claims) shall be reinstated, cancelled, reduced, transferred, or otherwise treated (by way of contribution to capital or otherwise), in each case at the Debtors' or Reorganized Debtors' option (with the consent of the Requisite Creditors), in accordance with

the Restructuring Transaction Steps. Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders have not been solicited with respect to Intercompany Claims. On the Effective Date, Class 10 (Intercompany Interests) shall be reinstated, modified, cancelled, or otherwise treated, in each case at the Debtors' or Reorganized Debtors' option (with the consent of the Requisite Creditors), in accordance with the Restructuring Transaction Steps. Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders have not been solicited with respect to Intercompany Interests.

M.     Treatment of Administrative Expense Claims, DIP Claims, Priority Tax Claims, and Priority Non-Tax Claims. The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to sections 2.1 and 2.2, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Allowed DIP Claims pursuant to section 2.3 of the Plan was agreed to by the holders of such claims, therefore satisfying the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

N.     Acceptance by Impaired Class. Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) are Classes of Impaired Claims that have voted to accept the Plan by

the requisite majorities set forth in the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

O.      Feasibility.  The information in the Disclosure Statement, the Confirmation Declaration, and the evidence proffered or adduced at the Confirmation Hearing establish that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

P.      Continuation of Retiree Benefits.  Subject to the cancellation of Existing Equity Interests pursuant to the Plan, section 8.5 of the Plan provides that all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans in effect on the Effective Date, are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.  The Plan therefore satisfies section 1129(a)(13) of the Bankruptcy Code.

Q.      No Unfair Discrimination; Fair and Equitable.  Class 6 (Subordinated Claims), Class 8 (Existing Parent Equity Interests) and Class 9 (Other Equity Interests) are deemed to have rejected the Plan.  The Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the

Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

R. <u>Only One Plan</u>. The Plan is the only plan filed in each of these chapter 11 cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

S. <u>Principal Purpose of the Plan</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

T. <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in section 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

U. <u>Implementation</u>. The Plan Documents, including the Plan Supplement, are essential elements of the Plan, and entry into each such Plan Document is in the best interests of the Debtors, the Estates and holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and all such Plan Documents, including the fees, expenses and other payments set forth therein have been negotiated in good faith and at arm's-length, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements.

V. <u>Injunction, Releases, and Exculpation</u>. The Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 1334 (b) to approve the injunctions, releases, and exculpation set forth in sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan. Section 105(a) of the Bankruptcy Code

permits issuance of the injunction and approval of the releases set forth in sections 10.6 and 10.7 of the Plan, respectively, if, as has been established here, based upon the record in the chapter 11 cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest, as reflected in the First Amended and Restated Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. The releases contained in section 10.7(b) of the Plan were disclosed and explained on the Ballots, in the Amended Confirmation Hearing Notice appended to the Resolicitation Order as Exhibit B, in the Disclosure Statement, and in the Plan. The release provisions contained in section 10.7(b) of the Plan are consensual under applicable law because the releases therein are provided only by parties who (i) voted in favor of the Plan; (ii) had an opportunity to affirmatively opt out of the releases, but either did not return a Ballot or elected not to opt out of the Non-Debtor Releases; or (iii) are holders of Claims or Interests that are Unimpaired under the Plan, such that their applicable Claims or Interests will be fully paid or otherwise satisfied in accordance with the Plan. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013). Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Reorganized Debtors and their estates, creditors, and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the applicable standards contained in *In re Indianapolis Downs*, 486 B.R. at 303 and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107

(D. Del. 2012). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. Accordingly, based upon the record of these chapter 11 cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, releases, and exculpation set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, releases, and exculpation would seriously impair the Debtors' ability to confirm the Plan.

W. <u>Compromise of Controversies</u>. In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to section 10.11 of the Plan.

X. <u>Good Faith</u>. The Debtors and the Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take any actions authorized and directed by this Order.

Y. <u>Sponsor Side Agreement</u>. The Sponsor Side Agreement is an essential element of the Plan. The terms of the Sponsor Side Agreement were negotiated at arm's-length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtors and evidence the Sponsor's and the Evergreen Skills Entities' consent to the Restructuring by and among the Debtors, the Sponsor, the Evergreen Skills Entities, and the Consenting Creditors party thereto. The releases provided to the Sponsor and to the Evergreen Skills Entities are appropriate because the Sponsor and the Evergreen Skills Entities provided valuable consideration in exchange for such releases, including by their support of the Plan through the Sponsor Side Agreement,

avoiding potentially costly and protracted litigation and, accordingly, preserving the value of the Debtors' business as a going concern. The Debtor Releases, including the releases provided to the Sponsor and to the Evergreen Skills Entities, are essential components of the Plan.

Z.      First Lien Agent, Second Lien Agent, and DIP Agent. Based upon a review of the record, the First Lien Agent, the Second Lien Agent, and the DIP Agent each, diligently and in good faith, discharged its duties and obligations pursuant to the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Credit Agreement, respectively, and otherwise conducted itself with respect to all matters in any way relating to the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Credit Agreement, respectively, with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, subject to any obligation to make post-Effective Date distributions or take such other action, if any, pursuant to the Plan on account of the Allowed DIP Claims, Allowed First Lien Debt Claims, or Allowed Second Lien Debt Claims, as applicable, and to otherwise exercise their rights and discharge their obligations (if any) relating to the Claims arising under their respective debt instruments in accordance with the Plan, the First Lien Agent, the Second Lien Agent, and the DIP Agent each has discharged its duties fully in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Credit Agreement, as applicable.

AA.      Valuation. Based on the valuation analysis set forth in section XII of the Disclosure Statement, which the Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, the Court finds that the valuation implied by the Restructuring Transactions is the best measure of the Reorganized Debtors' value given the facts and circumstances of these chapter 11 cases.

# ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.     Confirmation of the Plan.  The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Order.  The Debtors are authorized to consummate the Plan after the entry of this Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in the Plan.

2.     Objections.  All objections, responses to, and formal or informal statements and comments in opposition to the Plan have either been resolved or withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing.  To the extent any other formal or informal comments in opposition to the Plan are raised on the record prior to or at the Confirmation, such oppositions are overruled in their entirety for the reasons stated on the record.

3.     No Action.  Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, except that, prior to the Effective Date, the Debtors shall enter into appropriate documentation to effectuate the Restructuring Transaction Steps attached to the Plan Supplement as Exhibit H.

4. <u>Binding Effect</u>. On or after entry of this Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, all holders of Claims against and Interests in the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests voted on, accepted or rejected, or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the chapter 11 cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

5. <u>Free and Clear</u>. Except as otherwise provided in the Plan, any Plan Document, or this Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges, and other interests whatsoever (excluding, for the avoidance of doubt, Liens securing obligations under the Exit Financing Documents (as defined in the First Amended and Restated Restructuring Support Agreement)). From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire, or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Court, and the U.S. Trustee (except for quarterly operating reports and fees associated therewith until the closing of the applicable chapter 11 cases).

6. <u>Implementation of the Plan</u>. After the Confirmation Date, the Debtors and the Reorganized Debtors, as applicable, and the appropriate officers, representatives, and members of the boards of directors of the Reorganized Directors shall be authorized to and may issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including the Plan Documents and those contained in the Plan Supplement, and take such other actions as may be necessary or appropriate to effectuate, implement, and further

evidence the terms and conditions of the Plan and the Plan Documents, including but not limited to the formation of the Shareholder Trust, and may similarly effectuate such transactions that are necessary or appropriate to maximize the tax efficiency of the Debtors, including but not limited to a transfer of all of the equity interests of Debtor Amber Holding Inc. held by Debtor Skillsoft Corporation, and all such other actions delineated in Article V of the Plan or otherwise contemplated by the Plan, without the need for any further approvals, authorization, or consents, except for those expressly required pursuant to the Plan or the Plan Documents.

7.    <u>Designation of Managers/Directors and Officers Approved</u>.    On the Effective Date, the initial board of managers/directors of the Reorganized Debtors shall be consistent with the terms of the Governance Term Sheet attached to the First Amended and Restated Restructuring Support Agreement and the terms of the applicable New Corporate Governance Documents of such Reorganized Debtors.  Such appointment and designation on the Effective Date is hereby accepted as being in the best interests of the Debtors and creditors and consistent with public policy and shall be formally approved by the shareholders of the respective Reorganized Debtors in accordance with applicable law.

8.    <u>Issuance of Newco Equity and Warrants</u>.  On and after the Effective Date, Newco Parent is authorized to issue or cause to be issued and shall issue (a) the Newco Equity and (b) the Warrants, each in accordance with the terms of this Plan without the need for any further act or actions by any Person.  All of the Newco Equity and the Warrants issuable under the Plan, when so issued, shall be duly authorized, validly issued, and, in the case of the Newco Equity, fully paid, and non-assessable.  The Warrant Equity (upon payment or satisfaction of the exercise price in accordance with the terms of the applicable Warrants) issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

9.    Exemption from Securities Law.  The issuance of and the distribution under the Plan of the Newco Equity and the Warrants (and the Warrant Equity issuable upon exercise thereof) shall be exempt, without further act or actions by any Person, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code.  The Newco Equity and the Warrants (and the Warrant Equity issuable upon exercise thereof) shall be freely tradable by the recipients thereof, (a) unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code and (b) subject to (i) compliance with, or the limitations of, any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities (including, but not limited to, Rule 144 under the Securities Act (or any successor provision) and its limitation on transfers by persons who are "affiliates" (as defined in Rule 405 of the Securities Act) of the issuer), (ii) the restrictions, if any, on the transferability of such securities under the terms of the New Corporate Governance Documents or the Warrant Agreements, as applicable, and (iii) applicable regulatory approval.

10.    Exit Credit Facility.

(a)    On the Effective Date, the Reorganized Debtors shall execute and deliver the Exit Financing Documents (as defined in the First Amended and Restated Restructuring Support Agreement), as applicable, and such documents shall become effective in accordance with their terms.  On the Effective Date, the Reorganized Debtors are authorized to and shall enter into the Exit Credit Agreement and all other documents, notes, agreements, guaranties, and other collateral documents contemplated thereby.  The Exit Credit Agreement shall constitute legal, valid, binding, and authorized joint and several obligations of the Reorganized Debtors enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge,

impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Order. On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the Exit Credit Agreement (y) shall be valid, binding, perfected, enforceable first priority Liens and security interests in the property subject to a security interest granted by the applicable Reorganized Debtors pursuant to the Exit Credit Facility, with the priorities established in respect thereof under applicable non-bankruptcy law and (z) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

(b)     The Exit Credit Agreement Agent is hereby authorized to file, with the appropriate authorities, financing statements, amendments thereto or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence the first priority Liens, pledges, mortgages, and security interests granted in connection with the Exit Credit Agreement. The guaranties, mortgages, pledges, Liens, and other security interests granted in connection with the Exit Credit Agreement are granted in good faith as an inducement to the lenders under the Exit Credit Agreement to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance and the priorities of such Liens, mortgages, pledges, and security interests shall be as set forth in the Exit Credit Agreement and/or the collateral documents executed and delivered in connection therewith.

11.     _Neal_ Action.  Notwithstanding anything herein, in the Plan or in the chapter 11 cases to the contrary, nothing in this Order, the Plan or the chapter 11 cases shall impair or otherwise waive, release or discharge any rights, claims, appeals or defenses arising out of or relating to the action titled _Neal v. Skillsoft Corporation, et al._, No. 17-cv-11833-MLW pending

before the United States District Court for the District of Massachusetts (the "**Neal Action**") or the underlying facts and circumstances that form the basis of the Neal Action and all rights, claims, appeals and defenses of all of the parties to the Neal Action are hereby preserved and deemed unimpaired.

            12.    <u>Certain Government Matters.</u>

            (a)    Notwithstanding any provision in the Plan, the Plan Supplement, this Order or other related Plan documents (as used solely in this Section 11(a), collectively, "**Plan Documents**"): nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor, Reorganized Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law. All rights, claims, liabilities, defenses or Causes of Action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors, the Reorganized Debtors under non-bankruptcy law with respect to any

such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of doubt, nothing shall: (i) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

(b)      Texas Unclaimed Property.  The following provisions of this Order will govern the treatment of the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") concerning the duties and responsibilities of the Debtors and the Reorganized Debtors relating to all unclaimed property presumed abandoned (the "**Texas Unclaimed Property**") under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "**Texas Unclaimed Property Laws**"):

(i)      On or within thirty (30) days after the Effective Date, the Debtors shall review their books and records and turn over to the Texas Comptroller any known, self-identified Texas Unclaimed Property presumed abandoned before the Petition Date and reflected

in property reports delivered by the Debtors to the Texas Comptroller under the Texas Unclaimed Property Laws (the "**Reported Unclaimed Property**").  With respect to such Reported Unclaimed Property, the Texas Comptroller will not seek payment of any interest or penalty by the Debtors or the Reorganized Debtors.

(ii)     Notwithstanding section 362 of the Bankruptcy Code, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the Texas Unclaimed Property Laws (the "**Texas Unclaimed Property Audit**") and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit.  The Debtors and the Reorganized Debtors shall fully cooperate with the Auditors to enable them to accurately and timely perform the Texas Unclaimed Property Audit by making the entities' employees, professionals, books, and records available.

(iii)     The Debtors' rights and defenses with respect to any allegations and claims asserted against the Debtors arising from or relating to the Texas Unclaimed Property Audit are hereby reserved; provided, however, that upon agreement between the Debtors or the Reorganized Debtors and the Texas Comptroller or a final nonappealable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the Debtors or the Reorganized Debtors shall turn over such unremitted Texas Unclaimed Property to the Texas Comptroller.

(iv)     Nothing herein precludes Debtors and Reorganized Debtors from compliance with continued obligations pursuant to Texas Unclaimed Property Laws.

13.     <u>Discharge</u>.     Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan or in

this Order, each holder (as well as any trustee or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or Reorganized Debtor.

14.     <u>Releases by Debtors</u>.  Except as otherwise expressly provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including without limitation the efforts of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring contemplated by the First Amended and Restated Restructuring Support Agreement, on and after the Effective Date, to the maximum extent permitted by applicable law, the Debtors and the Estates are deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from, and covenanted not to sue on account of, any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims and avoidance actions, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place at any time prior to or on the Effective Date, arising from or related in any way in whole or in part to the chapter 11 cases, the Restructuring, the Evergreen Skills Entities, the Parent, the Company

or any direct or indirect subsidiary of the Parent, the First Lien Credit Agreement, Second Lien Credit Agreement, any Credit Document (as defined in the Credit Agreements), the Existing AR Credit Agreement, the DIP Credit Agreement, the Exit Credit Agreement, the purchase, sale, or rescission of the offer, purchase or sale of any security of the Company, the subject matter of, or the transactions or events giving rise to, any claim against or equity interest in the Company that is treated hereunder, or the negotiation, formulation, or preparation of the Definitive Documents or related agreements, instruments, or other documents, in each case other than claims or liabilities arising out of a Released Party's own intentional fraud, gross negligence, or willful misconduct.

15.     Releases by Holders of Claims or Interests.  Except as otherwise expressly provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including without limitation the efforts of the Debtors and Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring contemplated by the First Amended and Restated Restructuring Support Agreement, on and after the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from, and covenanted not to sue on account of, any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims and avoidance actions, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place at any time prior to or on the Effective Date, arising from or related in any way in whole or in part to the chapter 11 cases, the Restructuring, the Evergreen

Skills Entities, the Parent, the Company or any direct or indirect subsidiary of the Parent, the First Lien Credit Agreement, Second Lien Credit Agreement, any Credit Document (as defined in the Credit Agreements), the Existing AR Credit Agreement, the DIP Credit Agreement, the Exit Credit Agreement, the purchase, sale, or rescission of the offer, purchase or sale of any security of the Company, the subject matter of, or the transactions or events giving rise to, any claim against or equity interest in the Company that is treated hereunder, or the negotiation, formulation, or preparation of the Definitive Documents or related agreements, instruments, or other documents, in each case other than claims or liabilities arising out of a Released Party's own intentional fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any First Lien Lender, Second Lien Lender, or DIP Lender from its respective obligations to the First Lien Agent, the Second Lien Agent, or the DIP Agent (and their respective successors, agents, and servants), as the case may be, under the applicable Credit Agreements or the DIP Credit Agreement.

16.  <u>Release and Exculpation Provisions</u>.  All release and exculpation provisions embodied in the Plan, including but not limited to those contained in sections 10.6, 10.7 and 10.8 of the Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for valuable consideration, and (iv) are in the best interest of the Debtors (and their Estates), the Reorganized Debtors, and all other parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided in the Plan. The release contained in section 10.7(b) of the Plan was disclosed and explained on the Ballots, in the Combined Notice appended to the Scheduling Order as Exhibit 1, in the Disclosure Statement, and in the Plan. The release provisions contained in section 10.7(b) of the Plan are consensual under applicable law because the releases therein are provided only by parties who (i) voted in favor of

the Plan; (ii) had an opportunity to affirmatively opt out of the releases, but either did not return a Ballot or elected not to opt out of the Non-Debtor Releases; or (iii) are holders of Claims or Interests that are Unimpaired under the Plan, such that their applicable Claims or Interests will be fully paid or otherwise satisfied in accordance with the Plan.

17.    <u>Plan Injunction</u>.  Pursuant to section 10.6(a) of the Plan, this Order shall, except as otherwise provided in the Plan or in the Plan Documents, constitute an injunction, as of the entry of this Order but subject to the occurrence of the Effective Date, permanently enjoining all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of

the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, and the Plan Documents, to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan and the Plan Documents.  By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in section 10.6 of the Plan.

18.     Indemnification Obligations.  Pursuant to section 8.4 of the Plan, subject to the occurrence of the Effective Date, the Company's indemnification provisions currently in place (whether in the bylaws, certificates of incorporation (or other equivalent governing documents), or employment contracts) for current and former directors, officers, employees, managing agents, and professionals and their respective affiliates will be assumed by the Company and not modified in any way by the Restructuring through the Plan or the transactions contemplated thereby.

19.     Payment of Statutory Fees.  All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors or the Reorganized Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all Statutory Fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's, or Reorganized Debtor's, as applicable, case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

20.     Exemption from Transfer Taxes.  Pursuant to section 1146 of the Bankruptcy Code and section 12.1 of the Plan, (i) the issuance, transfer or exchange of any

Securities, instruments or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) all sale transactions consummated by the Debtors and approved by the Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (v) the grant of Collateral under the Exit Credit Agreement, and (vi) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to this Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

21. <u>Restructuring Fees and Expenses</u>.  The Restructuring Fees and Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date activities, after the Effective Date), shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement, without any requirement to file a fee application with the

Bankruptcy Court or without any requirement for Bankruptcy Court review or approval. All Restructuring Fees and Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; provided, however, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Fees and Expenses. On the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Fees and Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. Notwithstanding anything to the contrary in the Plan or this Order, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, shall pay on or before the Effective Date all Restructuring Fees and Expenses (as defined in the Final DIP Order) to the extent invoiced not less than one Business Day prior to the Effective Date, including reimbursement or payment of reasonable and documented fees and expenses to the extent required to be reimbursed or paid by the Credit Parties (as defined in the Final DIP Order) under the Final DIP Order.

22. <u>Documents, Mortgages, and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated in the Plan and this Order.

23. <u>Reversal/Stay/Modification/Vacatur of Order</u>. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation,

indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

24.     <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan, the Plan Documents, or this Order, shall retain exclusive jurisdiction over all matters arising out of, and related to, the chapter 11 cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.

25.     <u>Modifications</u>.  Subject to the First Amended and Restated Restructuring Support Agreement, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by this Court.  In addition, subject to the First Amended and Restated Restructuring Support Agreement, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have

accepted the Plan as amended, modified, or supplemented; *provided*, *however*, that any such modification is acceptable to the Requisite Creditors.  Subject to the First Amended and Restated Restructuring Support Agreement, prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

26.    <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

27.    <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

28.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

29.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to section 1123(a) and section 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

30. <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements (including the Plan Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

31. <u>Notice of Order</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order and occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

32. <u>Post-Effective Date Notices</u>.  After the occurrence of the Effective Date, the Reorganized Debtors have authority to send a notice to entities that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, the Reorganized Debtors are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to those entities that have filed such renewed requests.

33. <u>Termination of the First Amended and Restated Restructuring Support Agreement</u>.  On the Effective Date, the First Amended and Restated Restructuring Support Agreement will terminate in accordance with section 5 thereof, except for any provisions

thereunder that expressly survive termination of the First Amended and Restated Restructuring Support Agreement.

34. _Waiver of Section 341(a) Meeting_. As of the Confirmation Date, the Section 341(a) Meeting has not been convened. The convening of the Section 341(a) Meeting is hereby waived in accordance with the Resolicitation Order.

35. _Termination of Challenge Period_. The Challenge Period (as defined in the Final DIP Order) is terminated as of the date hereof, and the stipulations, admissions, waivers, and releases contained in the Final DIP Order shall be binding on the Debtors' estates and all parties in interest.

36. _Final Order_. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

37. _Substantial Consummation_. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

38. _Waiver of Stay_. The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

39. _Inconsistency_. To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

40. _No Waiver_. The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver

thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

41. <u>Restructuring Transactions</u>. Prior to or on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and this Order.

**Dated: August 6th, 2020**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**